## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER BROWN, | ) | CASE NO. 3:24-cv-00950 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN REIS, *et al.*, | ) | NOVEMBER 8, 2024 |
| *Defendants.* | ) | |

## <u>INITIAL REVIEW ORDER</u>

Kari A. Dooley, United States District Judge:

The plaintiff, Christopher Brown, a sentenced prisoner[1] in the custody of the Connecticut Department of Correction ("DOC") who has recently transferred from Corrigan-Radgowski Correctional Institution ("Corrigan") to Cheshire Correctional Institution ("Cheshire") filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the United States Constitution and Americans with Disabilities Act ("ADA"). He names as defendants DOC District Administrator Rodriguez and several DOC employees who work at Cheshire: Warden Reis, Deputy Warden Nunez, and Deputy Warden Soley in both their individual and official capacities.[2]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff was sentenced on January 20, 2006, to a term of incarceration that has not yet expired. *See* CT DOC Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=284612 (last visited Oct. 25, 2024).

[2] Plaintiff has filed an amended complaint to comply with the Court's order to sign and file the Certifications and Warnings section of the District of Connecticut *Pro Se* Prisoner Civil Rights Complaint form. *See* ECF No. 11, Order; ECF No. 12, Am. Compl. The Court notes that Plaintiff's amended complaint merely incorporates the factual allegations of his original complaint. Thus, the Court's initial review refers to the allegations asserted in the original complaint.

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed Plaintiff's complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

**Allegations**

The Court considers Plaintiff's allegations to be true. They are summarized as follows.

Plaintiff has been classified by the DOC as an inmate with serious mental illness conditions, including Post Traumatic Stress Disorder ("PTSD"), borderline personality disorder, and anti-social personality disorder. Compl., ECF No. 1, at ¶¶ 11–12

At Cheshire, Plaintiff was subjected to unsanitary and unsafe living conditions. He was forced to shower in stalls flooded with water filled with urine, feces, and bacteria. As a result of this exposure to unsanitary water, Plaintiff developed a foot fungus. *Id.* at ¶ 13

Plaintiff filed a grievance about the unsanitary shower stalls. *Id.* at ¶ 14. Warden Reis denied Plaintiff's grievance, stating that the "showers are cleaned every day and the drains were repaired by maintenance staff." *Id.* at ¶ 17; *See also id.* at p. 17 (Grievance).[3] Yet the shower stalls continued to flood and were not actually fixed. *Id.* at ¶ 18.

Thus, Plaintiff filed a grievance appeal to District Administrator Rodriguez, who denied Plaintiff's appeal for the stated reason that the "facility did remedy the issue[.]" *Id.* at p. 19 (Grievance Appeal). Plaintiff claims the shower stalls still flooded with water that contained built-up waste.

---

[3] In numbering the pages of his complaint, Plaintiff divided the complaint into two portions and numbered them separately. For ease of reference, when the Court refers to page numbers in Plaintiff's Complaint, it refers to the numbers provided by the CMECF system, and not those handwritten by Plaintiff.

After he filed a Health Services Administrative Remedy, Plaintiff saw a doctor who examined his foot fungus and upheld his grievance. *See id.* at p. 20–21 (Health Services Administrative Remedy)*.* The doctor provided Plaintiff with a steroid cream to eradicate the infection. *Id.* at ¶ 20.

Plaintiff claims that his living conditions in the East Wing of Cheshire—where prisoners are confined twenty-two hours a day in a cell—are hazardous and are filled with black mold, fungus, and crud. *Id.* at ¶ 24. He asserts that prisoners are released from their cell for one hour in the day and one hour at night, but there is no recreational area to afford prisoners exposure to the outdoors and fresh air. *Id.* at ¶¶ 2, 38–39. Plaintiff claims that prisoners in segregation are denied their basic human need for fresh air and visualization of outdoor scenery.

Plaintiff complains that whenever he spends time in segregation, he feels sick from the exposure to the "crud" around, in the sink hole that he drinks from and in the air from filthy vents. *Id.* at ¶ 25. Plaintiff filed a grievance about these conditions. *Id.* at ¶ 26. Plaintiff's grievance and grievance appeal about these unsanitary conditions were denied by Warden Reis and District Administrator Rodriguez for the stated reason that the restrictive housing cells in the East Block are cleaned on a regular basis. *Id.* at p. 22–24 (Grievance and Grievance Appeal). Warden Reis and District Administrator Rodriguez indicated they would do nothing additional to remedy the situation.

Plaintiff asserts further that he has also been deprived of a desk and chairs so that he can work on his legal work, homework, and family correspondence. Because he has no chair, he has had to lie down on the floor to write and eat his food. *Id.* at ¶¶ 40–43. He asserts that a desk and chair are necessities for an inmate who spends most of his time in the cell and that he is subject to mental deterioration due to the inability to sit and eat, write his family, or complete his legal work.

*Id.* Plaintiff filed a grievance to complain about (1) the lack of a desk and chairs in his cell for his legal work and family correspondence, and (2) the need for a recreational area to enable segregation prisoners to have fresh air. *Id.* at p. 25. Warden Reis denied his grievance for the stated reason that Plaintiff's grievance was not procedurally compliant with the requirement of Administrative Directive 9.6, that each request for an administrative remedy be filed separately. *Id.*

On March 13, 2023, Plaintiff received a disciplinary report issued by Officer Raza for possession of contraband ("a makeshift pipe" "a stinger," and "green leafy substance" that tested positive for THC). *Id.* at p. 48. This violation was a "Class A" ticket. *Id.* Plaintiff asserts that DOC Administrative Directive 9.5 prohibits imposition of punitive segregation and more than two "sanctions" for a Class A ticket. *Id.* at ¶ 49.[4] As a result of this disciplinary violation, he received disciplinary sanctions of seven days of punitive segregation, fifteen days of loss of commissary, and a thirty-day loss of Risk Reduction Earned Credit. *Id.* at ¶ 48, p. 50. Plaintiff also claims he sustained the sanction of being removed from a school program to obtain his Graduate Equivalent Degree ("GED"). *Id.* at ¶¶ 48, 50, 62. Plaintiff claims that he received the Disciplinary Report because of his mental health and that he will never be able to complete his GED studies if he continues to receive disciplinary infractions due to his mental health issues or substance abuse and self-medicating. *Id.* at ¶¶ 54, 64. He asserts that Defendants took him out of the school program because they knew he would continue to receive disciplinary reports due to his mental health issues. *Id.* at ¶ 55.

---

[4] Plaintiff attached an excerpt from Administrative Directive 9.5, which specifies that for Class A Offenses the punishment limit is "punitive segregation; forfeiture of good time or RREC; and two (2) different penalties." *Id.* at p. 32. In his Complaint, Plaintiff uses the word "sanctions" rather than "penalties." He states that he received two sanctions, but argues that his removal from school should count as a third, which would be more than are authorized by the Administrative Directive for a Class A Offense. However, he indicates that removal from school "is not considered an actual sanction" because prisoners are not entitled to attend. *Id.* at ¶ 49.

Plaintiff claims that federal and state law require that individuals who are 21 years or younger go to school, and therefore, inmates 21 and younger cannot be prevented from going to school after they commit a disciplinary violation. *Id.* at ¶ 56. He asserts that he has been treated differently from inmates who are 21 and younger and commit disciplinary violations. *Id.* at ¶¶ 57–58. In addition, he claims violation of the ADA based on his exclusion from the educational program. *Id.* at ¶ 59.

Plaintiff's Level 1 Grievance about his removal from the school program was denied by Warden Reis. *Id.* at ¶ 65, p. 52. His Level 2 Appeal was later denied by District Administrator Rodriguez. *Id.* at p. 54.

**Discussion**

Plaintiff brings Eighth Amendment claims arising from his conditions of confinement during his segregation in the East Block at Cheshire; and ADA, Fourteenth Amendment, and Administrative Directive violations arising from the disciplinary report and proceedings.

**Section 1983 claims: Unconstitutional Conditions of Confinement**

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). Plaintiff asserts both individual and official capacity claims against Defendants for violation of his constitutional rights.

*Official Capacity Claims*

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S.

123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *6 (D. Conn. May 8, 2020). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a).

Plaintiff seeks an injunction prohibiting Defendants from housing prisoners in the Cheshire East 1, 2, and 3 wings, or in the alternative, to remediate the unsanitary conditions therein. Compl. at ¶ 74. He asks the Court to declare that these areas are uninhabitable. *Id.* In addition, he seeks adequate furnishings and a recreational area for himself and other Cheshire prisoners. *Id.* at ¶¶ 75–76.

Plaintiff has only recently transferred back to Cheshire from Corrigan. *See* Notice of Change of Address, ECF No. 14. Thus, any alleged constitutional violation arising from his Cheshire conditions occurred in the past. There is no indication that Plaintiff is subjected to any ongoing violation of his constitutional rights. Moreover, Plaintiff seeks to remedy conditions within DOC beyond those conditions complained of in this action. As such, Plaintiff's request for official capacity relief exceeds the scope of any plausible violation asserted in this matter. Official Capacity claims are therefore dismissed.

*Eighth Amendment*

Plaintiff is a sentenced prisoner and therefore his conditions of confinement are governed by the specific constitutional provisions of the Eighth Amendment Cruel and Unusual Clause rather than the Fourteenth Amendment Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017).

Thus, any claims concerning his conditions of confinement in violation of the Fourteenth Amendment are dismissed.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates*." Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). In *Helling v. McKinney,* the Supreme Court held that the Eighth Amendment protects prisoners from an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's future health. 509 U.S. 25, 33–35 (1993).

To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state

equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

*Deputy Wardens Soley and Nunez*

To state any plausible claims for damages against Defendants in their individual capacities, Plaintiff must allege facts that establish the personal involvement of a defendant (against whom he asserts claims) in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020). A plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.* Thus, in the context of his Eighth Amendment claims, Plaintiff must plead facts to reflect that a defendant acted with deliberate indifference, "meaning that [Defendant] personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." *Id.* at 619 (citations omitted).

Plaintiff has not alleged any facts in the body of his complaint as to conduct by Deputy Wardens Nunez or Soley which violated his constitutional rights. Plaintiff's complaint contains no factual allegations to support an inference that Deputy Wardens Nunez or Soley were aware of Plaintiff's alleged unconstitutional conditions of confinement in the East Block but failed to take any remedial action. Thus, Plaintiff has not stated any plausible damages claims for a constitutional violation under 42 U.S.C. § 1983 against Deputy Wardens Nunez or Soley. *See Branch v. Guadarrama*, No. 3:24CV536 (MPS), 2024 WL 1973494, at *2 (D. Conn. May 3, 2024) (dismissing claims against Warden and Commissioner because Plaintiff's complaint failed to allege facts to reflect their personal involvement in Plaintiff's slip and fall); *Oh v. Quiros*, No.

3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against Nurse Supervisor absent allegations about her conduct to violate his rights); *Smith*, 2020 WL 2307643, at *5 (dismissing all claims against defendants where complaint established no connection between defendants and alleged constitutional violations). Claims against Defendants Nunez and Soley are dismissed without prejudice.

*Unsanitary or Unhealthy Conditions of Confinement – Warden Reis and Administrator Rodriguez*

Plaintiff asserts Eighth Amendment claims arising from conditions of unsanitary shower stalls; unclean cell conditions with mold, fungus, and filthy vents; and no access to outdoor recreation opportunities.

Under the Eighth Amendment, inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). Unsanitary conditions have satisfied the objective element where "the area in front of a prisoner's cell is filled with human feces, urine, and sewage water, ... a prisoner's cell is fetid and reeking from the stench of the bodily waste from the previous occupants, ... a prisoner's cell floor has urine and feces splattered on the floor." *McFadden v. Noeth*, 827 F. App'x 20, 2020 WL 5415469, at *6 (2d Cir. 2020) (summary order) (citations and quotations omitted). The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and it has instructed that a claim based on exposure to unsanitary conditions "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim

where inmate plaintiff alleged that while kept naked in an observation cell, he was exposed, at a minimum, to seven days of human waste).

*Shower Stalls and Cell*

Plaintiff's allegations about shower stalls filled with feces and bacteria resulting in his fungal infection on his foot are sufficient to plausibly allege a deprivation of a basic human need for sanitary shower conditions. Likewise, Plaintiff's allegations—that he felt sick after being confined in conditions with "black mold, fungus and crud" and filthy air vents—are sufficient to support a claim of unsanitary confinement conditions of constitutional dimension. *See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003) (affirming constitutional violation of inadequate ventilation at eleven facilities based on "the presence of large numbers of inoperable windows, clogged or dirty ventilation registers and exhaust vents in showers and cells, and poor air quality"); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *8–9 (D. Conn. Feb. 2, 2018) (black mold on cell vent could plausibly allege Eighth Amendment); *Maxie v. Levenhagen,* No. 3:13–cv–1280, 2014 WL 3828292, at * 1 (N.D. Ind. Aug.4, 2014) (holding that allegations that plaintiff was exposed to, *inter alia,* "excessive amounts of 'black mold, mildew, and asbestos,'" which caused him "breathing difficulties," were sufficient to withstand dismissal). Accordingly, the Court concludes that Plaintiff has sufficiently alleged objectively serious unsanitary shower and cell conditions that posed a risk of harm to his health and wellbeing.

With respect to the subjective element, Plaintiff has alleged that both Warden Reis and District Administrator Rodriguez considered his complaint about unsanitary cell conditions and shower stalls but failed to take any remedial measures. While receipt of a letter or grievance without personally investigating or acting is not enough to establish a supervisor's personal involvement, a plaintiff can establish personal involvement "where a supervisory official receives

and acts on a prisoner's grievance." *Delaney v. Perez*, No. 19-CV-6084 (NSR), 2021 WL 3038642, at *3 (S.D.N.Y. July 16, 2021) (citing cases) (cleaned up). Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment claims against Warden Reis and District Administrator Rodriguez for deliberate indifference to his risk of harm from unsanitary shower stalls, cell conditions, and dirty air vents.

   *Furniture*

   Generally, Courts considering similar claims have held that an inmate does not have a constitutional right to a desk and chair or stool. *See Ennis v. Scully*, No. 86 Civ. 4578 (JFK), 1989 WL 153034, at *2 (S.D.N.Y. Dec. 11, 1989) ("While it would be helpful to plaintiffs in their educational pursuits to be provided with desks, the Court does not find that failure to provide desks violates any Constitutional right of plaintiffs . . . ."); *Hatchet v. Darby*, No. Civ. A. DKC-13-0147, 2013 WL 490948, at *2 (D. Md. Feb. 7, 2013) (holding that failure to provide desk for each inmate was not deprivation of a life necessity but an inconvenience within the purview of expected conditions in prison); *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, at *4 (N.D. Ill. Sept. 8, 2009) ("Plaintiff has no constitutional right to have a stool or other furniture on which to sit in his cell.") (collecting cases).[5]

   Plaintiff's complaint indicates that he was not comfortable eating or writing in his cell without a desk and chair. Plaintiff makes a conclusory assertion that his lack of furniture caused him mental distress and mental health deterioration. But even if his lack of furniture satisfies the objective element, no facts suggest that either Warden Reis or District Administrator Rodriguez had any awareness that his lack of furniture cause him to suffer serious pain or deprived him of a

---

[5] Failure to provide an adequately furnished cell may constitute a sufficiently serious deprivation for purposes of the Eighth Amendment where a plaintiff alleges that the condition contributed to the deprivation of a basic need or caused significant pain. *See, e.g., Bell v. Luna*, 856 F. Supp. 2d 388, 398 (D. Conn. 2012) (failure to replace "useless and unhygienic" mattress constituted Eighth Amendment violation).

basic human need. Notably, Warden Reis did not review the merits of Plaintiff's grievance about his lack of furniture in his cell, and Plaintiff's grievance did not alert her that his lack of a desk and chair caused him anything more than difficulty in preparing his legal work or family correspondence. *See* Compl. at p. 25. Accordingly, the Court dismisses Plaintiff's Eighth Amendment claim arising from his lack of a desk and/or chair in his cell.

*Access to Outdoor Recreation*

Plaintiff complains of inadequate outdoor recreation opportunities. He claims that he was not afforded access to outdoor recreation as an inmate in the Cheshire segregation unit.

Exercise is a basic human need protected by the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991). Prison officials may, however, limit the right to out-of-cell exercise where there is a valid safety exception or certain unusual circumstances. *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996). A lack of indoor exercise and an "occasional day without exercise" does not give rise to a constitutional claim where "outdoor recreation space [is] provided[,] and opportunity for its daily use [is] assured." *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985).

At this early stage in the proceedings, the Court will permit Plaintiff's Eighth Amendment claim arising from inadequate opportunity for outdoor recreation to proceed against Warden Reis, who was plausibly aware of Plaintiff's lack of access for outdoor recreation while housed in Cheshire's East Block. Plaintiff's complaint does not, however, allege facts to plausibly suggest that District Administrator Rodriguez was aware of Plaintiff's deprivation of outdoor recreation opportunities at Cheshire.

Therefore, Plaintiff may proceed for further development of the record on this Eighth Amendment claim against Warden Reis in her individual capacity. But Plaintiff's lack of outdoor recreation claim is dismissed as to District Administrator Rodriguez.

**Grievance Interference**

Plaintiff complains about the handling of his grievances. To the extent he claims constitutional violation arising from interference with, or mishandling of, his administrative remedies, Plaintiff does not state a claim for liability under 42 U.S.C. § 1983. Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or even to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confuses a state-created procedural entitlement with a constitutional right[]"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures[]'"). Thus, any section 1983 claims premised on violation of the DOC grievance procedure are dismissed.

**Disciplinary Sanctions**

Plaintiff asserts several claims related to his disciplinary violation: (1) that his removal from school violates his Fourteenth Amendment right to equal protection; [6] (2) that his removal violated his rights under the ADA; and (3) that his removal from school constitutes a third sanction in violation of DOC Administrative Directive 9.5.

*Fourteenth Amendment Equal Protection Violation*

---

[6] To the extent Plaintiff asserts any other constitutional violation based on his removal from the prison school program, the federal Constitution confers no fundamental right to an education. *We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 146 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024).

Plaintiff claims that he is being treated differently from other inmates who are 21 and younger insofar as they are not removed from school after a disciplinary violation.

A successful equal protection claim requires a plaintiff to "allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Morgan v. Semple*, 2020 WL 2198117, at *19 (D. Conn. 2020) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

Absent a suspect classification, a plaintiff may proceed under a "class of one" theory by "alleg[ing] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "[P]risoners in general are not a suspect class." *Rahim v. Martin*, 2023 WL 4745536, at *7 (D. Conn. 2023) (citing *Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012)). While "[a]ge is not a suspect classification under the Equal Protection Clause," *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000), Plaintiff may still bring an equal protection claim of age discrimination, but he "'bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Harry v. McDonald*, 2022 WL 3576676, at *5 (D. Conn. Aug. 19, 2022) (quoting *Kimel*, 528 U.S. at 83); *see also Neary v. Gruenberg*, 730 F. App'x 7, 9-10 (2d Cir. 2018), *as amended* (Apr. 5, 2018) ("Because age is not a suspect class, age-based discrimination does not offend equal protection 'if the age classification in question is rationally related to a legitimate [government] interest.'") (citing *Kimel*, 528 U.S. at 83). Thus, Plaintiff must allege facts to suggest that there is no rational basis

for his removal from school while inmates 21 and under are not removed from school programs after a disciplinary violation. *See We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 158 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024) ("Under the Equal Protection Clause, claims that the government has discriminated based on age are typically subject to rational basis review because age is not a suspect classification.") Plaintiff cannot state a plausible equal protection claim as a result of his alleged disparate treatment based on age because his allegations indicate that the differential treatment is required by federal and state law. Accordingly, Defendants had a rational basis for treating inmates 21 and under differently from Plaintiff.

Nor has Plaintiff alleged a successful equal protection claim under a "class of one" theory of discrimination. To succeed on this theory, Plaintiff "must demonstrate the existence of a 'comparator'—someone who is 'prima facie identical'—who was treated differently." *Williams v. Mulligan*, 2023 WL 8258913, at *8 (D. Conn. 2023). Plaintiff has not identified any such comparator to support an inference of an equal protection violation. Accordingly, Plaintiff's claims of Fourteenth Amendment equal protection violation are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Administrative Directive 9.5*

To the extent Plaintiff asserts a violation of his Fourteenth Amendment due process rights, Plaintiff's claim fails. The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. While procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State." *Case v. Anderson*, No. 16 Civ. 983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25,

2017) (citing *Madden v. City of Meriden*, 602 F. Supp. 1160, 1166 (D. Conn. 1985)). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement, a plaintiff cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Mandatory language in a prison directive or regulation alone does not create a liberty interest. *See Sandin,* 515 U.S. at 483 ((departing from the then-usual practice of courts to "search for a negative implication from mandatory language in prisoner regulations" because such a practice "strayed from the real concerns undergirding the liberty protected by the Due Process Clause."). Thus, allegations of a failure to comply with state-created procedures does not implicate due process rights absent facts indicating a deprivation that is atypical and significant. *See Fernandez v. Armstrong*, No. 3:02CV2252CFD, 2005 WL 733664, at *10 (D. Conn. Mar. 30, 2005) (explaining "mandatory language in a prison directive or regulation does not in and of itself create a liberty interest.")

Moreover, it is well established that state prison directives do not confer any constitutionally protected rights on inmates." *Riddick v. Chevalier*, No. 11-cv-1555 (SRU), 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013) ("State prison directives do not confer any constitutionally protected rights on inmates ... and Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives."); *see Sandin,* 515 U.S. at 481–82 (noting prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates).

Accordingly, Plaintiff's constitutional claims predicated on DOC Administrative Directive 9.5 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Disability Discrimination**

The Court also considers whether Plaintiff's allegations state any plausible claim for disability discrimination under either the Americans with Disabilities Act ("ADA") or the Rehabilitation Act ("RA"). The standards under Title II of the ADA and § 504 of the RA "are generally the same[.]" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[7] The ADA and the RA both apply to state prisons and prisoners. *Wright*, 831 F.3d at 72.[8]

To establish a prima facie violation under Title II of the ADA or the Rehabilitation Act, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories[]" of discrimination that can be used to establish the third prong of an ADA and Rehabilitation Act claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to

---

[7] The only difference between the ADA and Rehabilitation Act is that the Rehabilitation Act applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

[8] "Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). As to official capacity claims, the Court is aware that it is presently unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or her official capacity, and, if so, under what circumstances such a claim can be maintained. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue). However, for purposes of initial review, the Court considers whether Plaintiff has alleged a plausible suggestion of disability discrimination against Defendants Warden Reis and District Administrator Rodriguez.

make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009). Neither the ADA nor the RA "applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice." *Reese v. Breton*, No. 3:18CV01465(VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020). Thus, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs*., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

Plaintiff alleges that his exclusion from the school program was based on his mental health issues, not just the disciplinary report he received on March 13, 2023. Compl. at ¶ 59. He later claims that his removal violated his ADA rights since he has "no GED, Diploma and suffers from mental disorders." *Id.* at ¶ 68. Plaintiff alleges that he has several mental health disorders and "sometimes cannot help lashing out or being somewhat disorderly." *Id.* at ¶ 62. He later claims that he received his disciplinary report for "substance abuse or self-medicating" and that he receives disciplinary reports "for a mental health issue." *Id.* at ¶¶ 55, 64.

Generally, the ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"42 U.S.C. § 12102(2)(A);[9] *see also* 29 C.F.R. § 1630.3(a)-(b) (excluding "individuals currently engaging in the illegal use of drugs," from the ADA's definition of disability, but providing that "the terms disability and

---

[9] In addition, a "qualified individual with a disability" is defined as a disabled individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

qualified individual with a disability may not exclude an individual who ... [i]s participating in a supervised rehabilitation program and is no longer engaging in such use.").

Plaintiff has identified his mental health disorders and explains that he "sometimes cannot help lashing out or being somewhat disorderly." Compl. at ¶ 62. According to his allegations, he often violates the prison rules and is removed from the program due to his violations and later is permitted to participate in the school program when he has to "start from the beginning." *Id.* at ¶ 54. Plaintiff claims that he engaged in substance abuse and is self-medicating, but he does not allege that he is attending or has attended a substance abuse program or sought mental health treatment in lieu of self-medicating in violation of prison rules. *Id.* at ¶ 64. Although it is not clear whether his condition substantially limits him in any major life activities, the Court considers him to assert that he is substantially limited in his ability to learn due to his mental health disabilities. *But see Lewis v. S. Connecticut State Univ.*, No. 3:19CV11 (AWT), 2020 WL 3619546, at *4 (D. Conn. July 2, 2020) (dismissing Title II ADA claim because plaintiff did "not allege any additional facts that plausibly suggest that such mental illnesses substantially limited one or more of his major life activities.") (citing *Tylicki v. St. Onge*, 297 Fed.Appx. 65, 67 (2d Cir. Oct.28, 2008) (holding that the plaintiff's complaint did not adequately plead a disability under Title II of the ADA where it contained no allegations describing how his alleged mental condition substantially limited a major life activity)).

Even assuming that he is a qualified individual under the ADA and RA, Plaintiff has not alleged sufficient facts to support the third element of his ADA and RA claims, that he was denied the opportunity to participate in the DOC school program "by reason of his disability." *Wright*, 831 F.3d at 72. Plaintiff alleges in solely conclusory terms that his removal from the school program was based on his mental health issues "not just" his disciplinary report, and that his ADA

rights were violated since he has "no GED, Diploma and suffers from mental disorders." Compl. at ¶¶ 59, 68. His allegations, however, do not indicate that his inability to attend school is because of his mental health conditions; instead, his complaint indicates that he is being removed temporarily from the school program due to his violation of the prison rules and a prison policy rendering him ineligible to participate in the school program until his "Class A offense clear[ed]". *Id.* at ¶¶ 63–64, pp. 51–54. Plaintiff alleges that Defendants "took him out of school" so they would not "have to deal" with him "in the Administrative area" because they "know" he would give up on school as he "will keep catching tickets" due to his mental health issues, requiring his removal and having to "continuously start from the beginning[.]" *Id.* at ¶¶ 53–54. But these assertions are speculative and cannot support his claim of disability discrimination pursuant to the ADA and RA. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"); *see also Avila v. Acacia Network, Inc.*, No. 1:24-CV-0884 (LTS), 2024 WL 4108012, at *6 (S.D.N.Y. Aug. 26, 2024) (dismissing Title II ADA claim based on conclusory allegations); *Murray v. Lakeland Cent. Sch. Dist. Bd. of Educ.*, No. 16-CV-6795 (KMK), 2017 WL 4286658, at *9 (S.D.N.Y. Sept. 26, 2017) ("Plaintiff's allegations again amount to nothing more than conclusory statements of discrimination, which are insufficient to state a claim [of discrimination under Title II of the ADA]."). Moreover, Plaintiff's own allegations indicate that he is not excluded from participating in the school program as he is able "to get back in school" 120 days after his disciplinary violation. *See* Compl. at ¶ 54, pp. 51–52.

As presently alleged, Plaintiff has not alleged any plausible ADA and RA claims and such claims are dismissed without prejudice. 28 U.S.C. § 1915A(b)(1).

**Orders**

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's Eighth Amendment individual capacity claims (1) against Warden Reis and District Administrator Rodriguez for deliberate indifference to his risk of harm from unsanitary shower stalls and cell conditions (including filthy air vents); and (2) against Warden Reis for deliberate indifference to his lack of access to outdoor recreation opportunities.

Plaintiff's ADA and Fourteenth Amendment equal protection claims under 42 U.S.C. § 1983 arising from his disciplinary sanctions are DISMISSED without prejudice. Any other claims, including official capacity claims, are also DISMISSED without prejudice. The clerk is instructed to TERMINATE as Defendants Deputy Wardens Soley and Nunez.

The Court affords Plaintiff one opportunity to file an amended complaint to correct any deficiencies of his claims as identified in this Order. Plaintiff must file his amended complaint **on or before December 9, 2024**.

Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. Plaintiff must also name in the case caption all of the defendants against whom he asserts his claims.

(2) The clerk shall verify the current work address of Warden Reis and District Administrator Rodriguez with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **December 2, 2024**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant

shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **May 7, 2025**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **June 6, 2025.**

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. **Failure to do so can result in the dismissal of the case.** Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case,

he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of November 2024.

 _/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE