# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER BROWN | ) | CASE NO. 24-cv-950 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REIS, *et al*, | ) | March 6, 2026 |
| *Defendants*. | ) | |

## MEMORANDUM OF DECISION
## RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 36)

Kari A. Dooley, United States District Judge:

Plaintiff Christopher Brown, a convicted state prisoner, filed this civil rights action *pro se* under 42 U.S.C § 1983, alleging violations of his rights under the United States Constitution and the Americans with Disabilities Act ("ADA") against Warden Reis, Deputy Warden Nunez, Deputy Warden Soley, and District Administrator Rodriguez. Plaintiff alleged that each of the defendants violated his federally protected rights in connection with allegedly unsanitary shower and cell conditions and lack of access to outdoor recreation activities at Cheshire Correctional Institution ("Cheshire CI").

The Court conducted an initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A. The Court allowed the following Eighth Amendment individual capacity claims to proceed: (1) Plaintiff's claims against Reis and Rodriguez for deliberate indifference to his risk of harm as a result of unsanitary shower and cell conditions; and (2) Plaintiff's claim against Reis for deliberate indifference to his lack of access to outdoor recreation opportunities. *See* IRO, ECF No. 15 at 21. The remaining claims were dismissed. *Id*.

Defendants filed a Motion for Summary Judgment. *See* Mot. for Sum. J., ECF No. 36. Therein, Defendants assert that Plaintiff has failed to exhaust his administrative remedies regarding

the alleged lack of outdoor recreation opportunities, there are no genuine issues of material fact as to Plaintiff's Eighth Amendment claims, which, accordingly, fail as a matter of law, and alternatively, Defendants are entitled to qualified immunity.  *See id*.

Upon review of the record submissions, for the reasons that follow, the Court agrees with Defendants.  Defendants' motion for summary judgment, ECF No. 36, is **GRANTED**.

**Background**

Procedural History

On May 28, 2024, Plaintiff filed his initial complaint.  Compl., ECF No. 1.  On July 29, 2024, he filed an Amended Complaint.  Am. Compl., ECF No. 12.[1]  The Complaint alleged that Defendants violated Plaintiff's civil rights while incarcerated at Cheshire CI by failing to maintain sanitary shower and cell conditions, failing to provide access to outdoor recreation activities, and unconstitutional conditions of confinement due to disciplinary sanctions.  Compl., ECF No. 1.

On November 8, 2024, the Court issued an Initial Review Order allowing the claims regarding unsanitary conditions and access to outdoor recreation to proceed.  *See* IRO, ECF No 15 at 21.  On April 1, 2025, Defendants filed an Answer to the Complaint and Amended Complaint, *see* ECF No. 28, to which Plaintiff filed a Reply on May 28, 2025, *see* ECF No. 29.  On August 1, 2025, Defendants filed the instant Motion for Summary Judgment.  *See* ECF No. 36.  On December 1, 2025, Plaintiff filed his Opposition, *see* ECF No. 44, and on January 5, 2026, Defendants filed their Reply, *see* ECF No. 47.

---

[1] Plaintiff's original Complaint, ECF No. 1, was unsigned.  The Court issued an order directing Plaintiff to file a signed District of Connecticut Pro Se Prisoner Civil Rights Complaint form.  Order, July 2, 2024, ECF No. 11.  Accordingly, Plaintiff filed the Complaint form, which was docketed as an Amended Complaint.  Am. Compl., ECF No. 12.  Ordinarily, the filing of an amended complaint supersedes the original.  *See, e.g.*, *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) ("An amended complaint . . . supersedes the original").  However, because ECF No. 12 contains only the signed form and not the allegations, the Court cites the allegations in Plaintiff's Original Complaint.  Compl., ECF No. 1.

Facts

The relevant facts are taken from the parties' respective Local Rule 56(a)(1) and Local Rule 56(a)(2) Statements and attached exhibits, as well as Plaintiff's Complaint for context. *See* Def. LRS, ECF No. 36-2; Pl. LRS, ECF No. 44-1; Compl. ECF No. 1. All the facts set forth herein are undisputed unless otherwise indicated.[2]

Plaintiff was housed at Cheshire CI during 2021 and 2022. Def. LRS, ECF No. 36-2 at ¶ 1. On December 18, 2021, Plaintiff was moved to a restrictive housing unit as a result of disciplinary action to which he pleaded guilty. *Id*. at ¶¶ 2–3. Plaintiff's sanction included five days in the restrictive housing unit, per Administrative Directive 9.5, Code of Penal Discipline. *Id*. at ¶¶ 4, 7. Resultantly, he was housed in the East Block 1 of the restrictive housing unit from December 18, 2021 until December 23, 2021. *Id*. at ¶ 7.

During the time of his confinement in the restrictive housing unit, Plaintiff alleges he and other inmates were denied adequate access to outdoor recreation time. Compl., ECF No. 1 at ¶¶ 38–39. The inmates were locked down for twenty-two hours a day and were denied fresh air because the unit lacked windows or outdoor recreation space. *Id*. at ¶ 38.

Plaintiff also alleges he was exposed to unsanitary conditions in the cells and showers, including urine and feces, mold, bacteria, and "crud" while housed in the restrictive housing unit. *Id*. at ¶¶ 13, 15, 24, 29. Plaintiff further alleges that he developed a foot fungus as a result of these conditions. *Id*. at ¶ 13. On January 18, 2022, Plaintiff filed a Health Services Administrative Remedy form regarding the foot fungus he contracted. Ex., ECF No. 1 at 20. Plaintiff's claim

---

[2] Insofar as Plaintiff's Local Rule 56(a)(2) Statement includes denials that are not supported by the record evidence, those facts are deemed admitted. *See, e.g.*, *Buell v. Hughes*, 568 F. Supp. 2d 235, 237 (D. Conn. 2008) (citing D. Conn. L. Civ. R. 56(a); *SEC v. Global Telecom Servs. LLC*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004)) (admitting paragraphs that the nonmoving party denied because the denials did not cite affidavits or evidence, contrary to the Local Rules). In fact, Plaintiff has only properly denied ¶ 28 of Defendants' Local Rule Statement. Pl. LRS, ECF No. 44-1 at ¶ 24; *see also* Ex. A, ECF No. 44 at 15.

was upheld and he was seen by a doctor who prescribed him a steroid cream to eradicate the fungus. *Id*. at 21. However, there is no indication that there was any mold or fungus in the unit during December 2021. Def. LRS, ECF No. 36-2 at ¶ 11. Had such conditions been reported, Plaintiff would have been provided with cleaning solution and a sponge and if mold had been found, the inmates would have been moved to a different unit during treatment of the mold or fungus. *Id*. at ¶¶ 13, 15. Furthermore, the cells are cleaned regularly and no staff member, nor any inmate, had reported a mold or fungus issue within the unit during the month of December 2021 when Plaintiff was housed there. *Id*. at ¶¶ 17–18. Captain Watson never experienced a mold issue in the Unit, nor did Warden Reis experience any issues when touring the unit twice per week. *Id*. at ¶¶ 22–23. In addition, Correctional Officers tour the unit every fifteen minutes and are required to check each individual cell. *Id*. at ¶ 25.

In terms of the showers, Plaintiff alleges they were dirty and there was feces on the floor. Compl., ECF No. 1 at ¶ 13. Plaintiff filed a grievance on June 11, 2022 regarding the shower conditions. *Id*. at ¶ 14. The grievance was denied as the showers were cleaned daily and the only reported issue—requiring maintenance to roto rooter a drain—was addressed. *Id*. at ¶ 17; Ex., ECF No. 1 at 17. Plaintiff filed an appeal which was also denied as any reported issues with the showers had been addressed. Ex., ECF No. 1 at 19. Although Defendants allege Captain Watson did not receive any complaints about urine or feces in the showers during December 2021 nor did he ever observe it himself, Plaintiff attaches a declaration from another inmate who reported routinely cleaning urine, feces, mold, and "crud" from the showers. Def. LRS, ECF No. 36-2 at ¶¶ 28, 32; Pl. Ex. B, ECF No. 44 at 16–17. However, Defendants maintain, and Plaintiff accepts that the showers were cleaned daily. Def. LRS, ECF No. 36-2 at ¶ 29. Defendants claim that had any such issues been reported, the showers would have been closed and cleaned immediately. *Id*.

at ¶ 31.  Additionally, had Plaintiff raised concerns of urine or feces in the showers to Captain Watson or Warden Reis, they would have instructed him to file an inmate request and if that did not solve the issue, then they would have instructed him to file a grievance.  *Id*. at ¶¶ 33–36.

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id*. at 250.  As a result, the moving party may satisfy his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted).  Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact.  *Id*. at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).  "[M]ere speculation or conjecture as to the true nature of the

facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted).

**Discussion**

Defendants move for summary judgment on the grounds that (1) Plaintiff has not exhausted his administrative remedies regarding access to outdoor recreation, (2) Plaintiff can neither satisfy the objective nor subjective prong of his deliberate indifference claim regarding the conditions of the showers and cells, and (3) Defendants are entitled to qualified immunity. *See* Mot. for Sum. J., ECF No. 36.

*Lack of Access to Outdoor Recreation Opportunities*

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C.

§ 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion": the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. Appx. 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, Nos. 14-cv-6606 (RJS), 14-cv-6857 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[t]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008) (summary order). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643 (citation omitted). "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 124 n.2 (2d Cir.

2016).  In considering the issue of availability, however, the Court is guided by these illustrations.  *See Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense.  Thus, the defendant bears the burden of proof.  *See Jones*, 549 U.S. at 216.  Once the defendant puts forth evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must put forth evidence that administrative remedy procedures were not available to him under *Ross*, or evidence which shows that he did exhaust his administrative remedies.  *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

The administrative remedy pertinent for health and safety claims falls under DOC Administrative Directive 9.6.  *See* Ex. F, ECF No. 36-8.  Here, Plaintiff did not file any timely grievance pertaining to the lack of outdoor recreation.  As such, he has not exhausted his administrative remedies on this issue.  *See Jones*, 549 U.S. at 217–18.  Plaintiff's reliance upon a grievance he filed in 2024 that broadly asserted that Connecticut facilities must provide outdoor recreation opportunities, *see* Opposition to Mot. for Sum. J., ECF No. 44 at 15, is misplaced.  The grievance does not satisfy Plaintiff's exhaustion requirement insofar as it was filed after Plaintiff had been transferred to an entirely different facility.  *Id*.  As such, it has no bearing on his claims regarding the restrictive housing unit at Cheshire CI.  *See id*.  Furthermore, Plaintiff has made no showing that administrative remedies were unavailable to him at Cheshire CI because he made no attempt to pursue them.  *See id*.; *see also Ross*, 578 U.S. at 642.

Furthermore, even if Plaintiff had exhausted his administrative remedies, Plaintiff's Complaint is limited to the five-day period he was in the restrictive housing unit. Therefore, even if he was denied adequate access to outdoor recreation, it was not for a substantial period sufficient to implicate the Eighth Amendment. Indeed, the Second Circuit has held that denial of outdoor recreation for a period of fourteen consecutive days was insufficient to find a constitutional violation. *See, e.g., Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (collecting cases) (citing *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (21 days); *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986) (up to 75 days); *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986) (15 days); *Arce v. Walker*, 907 F. Supp. 658, 662–63 (W.D.N.Y 1995) (18 out of 19 days)). Plaintiff's lack of outdoor recreation for five days, therefore, does not meet the standard for an Eighth Amendment violation.

For the foregoing reasons, the Court finds there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies regarding the lack of outdoor recreation time for the five days he was in the restrictive housing unit. Further, even if he had exhausted administrative remedies on this issue, Defendants are entitled to judgment as a matter of law because the allegations, even if proven, do not constitute an Eighth Amendment violation. *See* Fed. R. Civ. P. 56(a).

*Unsanitary Shower and Cell Conditions*

Plaintiff's remaining claim alleges an Eighth Amendment violation for unsanitary conditions in she showers and cells in the restrictive housing unit at Cheshire CI.

Prison conditions can themselves constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To

state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate (1) that he was incarcerated under a condition or a combination of conditions that resulted in an objectively "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety, *Farmer*, 511 U.S. at 834; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and (2) the defendant acted with a subjectively reckless state of mind akin to criminal recklessness, *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, *sanitary living conditions*, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago City Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes*, 452 U.S. at 348. Conditions are considered in combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *See Wilson*, 501 U.S. at 304.

As to the *mens rea* prong, the prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently. Plaintiff must allege that the defendants were aware of a substantial risk that he would be seriously harmed if they did not act. *See*, *e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's claim fails. First, his claim that the shower and cell conditions were unsanitary (the first prong) is wholly unsupported by the evidence. Plaintiff has not offered any evidence or

demonstrated any facts that that would establish a sufficiently serious deprivation of a life necessity or human need. *Farmer*, 511 U.S. at 834. As previously discussed, Plaintiff has admitted or been deemed to have admitted all but one of the facts set forth in Defendants' Local Rule Statement. *See Buell*, 568 F. Supp. 2d at 237. As such, the undisputed facts reveal an utter dearth of evidence that there was urine, feces, mold, fungus, or "crud" in the showers or cells. To the contrary, the areas were patrolled and cleaned regularly and Defendants never observed unsanitary conditions or were made aware of any reports of such conditions. Def. LRS, ECF No. 36-2 at ¶¶ 28–29, 33–36. Although Plaintiff submitted grievances after the fact, Defendants received no complaints about the showers during the time that Plaintiff was housed there with the exception of a drain that required maintenance which was addressed. Def. LRS, ECF No. 36-2 at ¶¶ 17, 23, 28–29. As a result, the evidence does not support any claim that Plaintiff was subjected to conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834; *see also Rhodes*, 452 U.S. at 347.

Additionally, even if a genuine issue of material fact exists as to the presence of unsanitary conditions, Plaintiff has offered no evidence that Defendants acted in a reckless manner, *see Salahuddin*, 467 F.3d at 280, or were even aware of the conditions or any substantial risk of serious harm to Plaintiff if they did not act, *see Spavone*, 719 F.3d at 138. It is undisputed that had Defendants been aware of any of the alleged unsanitary conditions, Defendants would have provided cleaning supplies, relocated inmates, or advised inmates to pursue administrative remedies as appropriate. Def. LRS, ECF No. 36-2 at ¶¶ 13, 15, 33–36. Furthermore, although Plaintiff was treated for a foot fungus, the facts demonstrate that Plaintiff contracted chronic athlete's foot prior to his transfer to Cheshire CI, *id.* at ¶¶ 44–47.

Accordingly, Plaintiff has not established a genuine issue of material fact as to his Eighth Amendment claim arising out of the allegedly unsanitary shower and cell conditions, and the claim fails as a matter of law.[3]  *See* Fed. R. Civ. P. 56(a).

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 36, is **GRANTED**.  The Clerk is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of March 2026.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court has determined that there is no genuine issue of material fact as to whether a constitutional violation occurred—none did—it need not address Defendants' alternative argument that they are entitled to qualified immunity.  *Duamutef v. Hollins*, 297 F.3d 108, 113 n.1 (2d Cir. 2002) (Once a court "decide[s] that there is no constitutional violation, there typically is no need to address whether defendants are also protected by qualified immunity").